Commercial Arbitration Rules
Demand for Arbitration
Kevin Quaintance v. ICOA, Inc.

## NATURE OF THE DISPUTE

This dispute arises out of the acquisition by ICOA, Inc. ("Respondent") of AuthDirect, Inc., of which Kevin Quaintance ("Claimant") was a founder and major shareholder, along with Joel Stalder (Joel Stalder has reached a separate settlement with Respondent and is not a party hereto). Under the terms of the acquisition, Claimant was to receive a number of payments pursuant to a promissory note dated September 8, 2004 (referred hereto as the "Old Quaintance Note attached hereto as Exhibit A). However, Respondent failed to honor the terms of the promissory note and defaulted. Soon thereafter, Claimant and Respondent entered into a new promissory note dated November 1, 2005 (attached hereto as Exhibit B, the "Convertible Promissory Note") At the same time, Claimant and Respondent entered into two additional promissory notes to address outstanding payments to US Bank and Graebel (a moving company) related to the purchase of AuthDirect, Inc. and Claimant's relocation to work for Respondent (attached hereto as Exhibit C, "US Bank Promissory Note" and D, "Graebel Promissory Note" respectively). All three notes were secured by a security agreement entered into between Claimant and Respondent (the security agreement is attached hereto as Exhibit E, the "Security Agreement"). After Respondent defaulted under the Convertible Promissory Note, Claimant exercised his rights under the Security Agreement and began levying various accounts of Respondent. Claimant stopped levying this account upon Respondent's assertions that it would resume regular payments. Unfortunately, these payments were not made, and Claimant felt that it would be necessary for him to assert his rights in arbitration.

Additionally, it should be noted that two of the officers of Respondent, George Strouthopoulos and Erwin Vahlsing, personally made knowingly false and misleading assurances regarding the financial condition of Respondent which Claimant relied upon to his detriment. As a result, both of these individuals are appropriately defendants in this proceeding.

Respondent also issued stock grants in Respondent's stock, the value of which dropped precipitously after the grant dates. Respondent in many cases delayed issuing stock as agreed until the stock price had declined. Claimant is informed and alleges on belief that Respondent knew that various statements and assurances about Respondent's financial condition were false and that George Strouthopoulos and Erwin Vahlsing personally misrepresented the value of the securities issued to Claimant.

As of February 1, 2007 Respondent owed Claimant $377,084.67, including interest and penalties, on the Convertible Promissory Note, Graebel Promissory Note, US Bank Promissory Note, in addition to outstanding expenses and consulting fees accrued while Claimant was employed as a consultant by Respondent. A spreadsheet listing all amounts owed and payments is attached hereto as Exhibit F.

Therefore, Claimant requests the following: (i) damages for breach of contract in the amount of $377,084.67; (ii) relief under Rule 10b-5 of the Securities Exchange Act of 1934; (iii) damages for common law fraud; and (iv) punitive damages according to proof. The total amount of estimated damages is $500,000, however Claimant reserves the right to increase or decrease the amount of damages requested pursuant to the course of the arbitration proceedings.

**NEITHER THIS NOTE NOR THE SECURITIES INTO WHICH THIS NOTE IS CONVERTIBLE HAVE BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT") OR ANY STATE SECURITIES LAWS AND NEITHER THIS NOTE NOR ANY INTEREST THEREIN NOR THE SECURITIES INTO WHICH THIS NOTE IS CONVERTIBLE MAY BE OFFERED, SOLD, TRANSFERRED, PLEDGED OR OTHERWISE DISPOSED OF EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACT AND SUCH LAWS OR AN EXEMPTION FROM REGISTRATION UNDER SUCH ACT AND SUCH LAWS WHICH, IN THE OPINION OF COUNSEL SATISFACTORY TO THE COMPANY, IS AVAILABLE.**

**Convertible Promissory Note**

$94,000

November 1, 2005

**FOR VALUE RECEIVED, ICOA, INC.**, a Nevada corporation having an office at 111 Airport Road, Warwick, Rhode Island 02889 (the "Company"), hereby promises to pay to Kevin Quaintance, 16 Timberland Dr., Lincoln, RI 02865 (the "Holder"), on November 1, 2007 or earlier upon prepayment of this Note as provided herein, the principal sum of $94,000 together with interest (computed on the basis of a 360-day year of twelve 30-day months and compounded monthly) on the unpaid balance at the rate of twelve percent (12%) per annum, from the date hereof until the principal hereof and all interest thereon shall have been paid.

The Company shall pay to the Holder $5,000 per month due on the first day of each month, commencing December 1, 2005 until the principal hereof and all interest thereon shall have been paid.

All or some of the principal amount of this Note, and all accrued interest thereon, may be prepaid by the Company, without premium or penalty, at any time upon five (5) days prior written notice to the Holder. Upon any prepayment of this Note, all accrued but unpaid interest on the principal amount shall be paid to the Holder on the date of prepayment. All payments hereunder shall be applied first to interest then to principal.

All payments of principal and interest shall be made to the Holder in lawful currency of the United States of America to the address set forth above or such other address as to which the Holder shall notify the Company in writing three (3) days prior to the due date hereof or upon notice of any prepayment of this Note.

Subject to and in compliance with the provisions hereof, the Holder may, at any time at the election of the Holder, convert all or any portion of the outstanding principal balance of this Note as of the date of conversion, and all or any portion of the interest accrued hereon to such date, into shares of the common stock, $0.0001 par value, of the Company (the "Common Stock"), at a conversion price equal to the average of the closing bid price per share of Common Stock (as reported by National Association of Securities Dealers, Inc.'s Over-the-Counter Bulletin Board) for the five trading days (the "Five Day Average" preceding the date hereof;; The Company agrees and covenants that it has reserved, and will have reserved at all times while this Note is outstanding, a sufficient number of authorized shares of the Common Stock necessary to issue to Holder in connection with such conversion. The Holder shall communicate

its intention to convert all or any portion of the principal amount of this Note and all or any portion of interest accrued through such conversion date by: (i) faxing the Form of Notice of Election to Convert, attached hereto as Exhibit "A" (the "Conversion Notice"), duly completed and signed, to the Company at 401-352-2323; and (ii) delivering to Company, within five business days thereafter, this Note along with the duly completed Conversion Notice, to the Company's address for notice set forth elsewhere herein.

In the event of a conversion by the Holder of all or any portion of the outstanding principal balance of this Note and all or any portion of accrued interest thereon into shares of the Common Stock, the Company will issue and deliver to the Holder, within five business days after the Company's receipt of the Conversion Notice and Note, a certificate evidencing the shares of Common Stock issuable upon any such conversion.

If the Holder elects to convert less than the entire principal amount of this Note and interest accrued to the date of such conversion, the Company shall issue or cause to be issued and delivered to the Holder, at the Company's expense, a new promissory note evidencing the outstanding amount of principal due hereunder after giving effect to the amount applied to the conversion, which such promissory note shall, except as to the principal amount thereof, be identical to this Note in all respects.

If the Company shall fail to make a payment of principal or interest when due, the Company shall pay to the Holder an additional $25 per day for each such business day such payment is past due. If there is a second occasion where the Company shall fail to make a payment of principal or interest when due, the Company shall pay to the Holder an additional $75 per day for each such business day such payment is past due. If there is a third or subsequent occasion where the Company shall fail to make a payment of principal or interest when due, the Company shall pay to the Holder an additional $200 per day for each such business day such payment is past due.

The Company covenants and agrees: (i) to pay, within five business days of this Note, $1,500 to Burns Figa & Will, P.C., counsel to Holder, for legal services in connection with this Note; and (ii) to issue, within ten business days of this Note, 60,000 shares of Common Stock to Scott Chandler, which shares will include customary piggyback registration rights.

If the Company:

(i) shall fail to make a payment of principal or interest when due and such failure shall continue for thirty (30) days after notice of such failure; or

(ii) shall make an assignment for the benefit of creditors, file a petition in bankruptcy, be adjudicated insolvent or bankrupt, suffer an order for relief under any federal bankruptcy law, petition or apply to any tribunal for the appointment of a custodian, receiver or any trustee for the Company or any substantial part of its assets; or

(iii) shall commence any proceeding under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of

any jurisdiction, whether now or hereafter in effect; or if there shall have been filed any such petition or application, or any such proceeding shall have been commenced against the Company, which remains undismissed, unstayed or unbonded for a period of thirty (30) days or more; or

(iv) by any act or omission shall indicate consent to, approve or acquiescence in any such petition, application or proceeding or the appointment of a custodian, receiver or any trustee for all or any substantial part of its properties; or

(v) shall allow such custodianship, receivership, or trusteeship to continue undischarged, unstayed or unbonded for a period of thirty (30) days or more; or

(vi) violates any term or provision of this Note, or fails to honor any covenant under this Note, and same remains uncured for a period of thirty (30) days after notice thereof by the Holder of this Note;

then and in any such event, the outstanding principal amount of this Note, together with all accrued and unpaid interest thereon, shall be and become immediately due and payable and the Holder shall have the rights specified under the Security Agreement between the Holder and the Company of even date herewith..

All notices and other communications provided for herein shall be sent by registered or certified mail, return receipt requested, or by personal delivery or via a nationally recognized overnight courier to the Holder or the Company, at their respective addresses as set forth herein, or to such other address as to which either party may advise the other by notice given in accordance with this provision. All such notices shall be deemed given upon the earlier of receipt or within five (5) business days of mailing if receipt is refused.

Notwithstanding any other provision of this Note, interest under this Note shall not exceed the maximum rate permitted by law; and if any amount is paid under this Note as interest in excess of such maximum rate, then the amount so paid will not constitute interest but will constitute a prepayment on account of the principal amount of this Note. If at any time the interest rate under this Note would, but for the provision of the preceding sentence, exceed the maximum rate permitted by law, then the outstanding principal balance of this Note shall, on demand by the holder of this Note, become and be due and payable.

All payments under this Note shall be made without defense, set-off or counterclaim, free and clear of and without deduction for any taxes of any nature now or hereafter imposed.

The undersigned agrees to pay on demand all expenses of collecting and enforcing this Note, including, without limitation, reasonable expenses and fees of legal counsel, court costs and the cost of appellate proceedings.

The provisions of this Note shall in all respects be construed according to, and the rights and liabilities of the parties hereto and shall in all respects be governed by, the laws of the State of Rhode Island. This Note shall be deemed a contract made under the laws of the State of Rhode Island to be fully performed therein, and the validity of this Note, and all rights an

# Online Filing Demand For Arbitration/Mediation Form

**This concludes your filing.**
**Thank you for submitting your claim to the AAA.**
**Your claim confirmation number is: 002-QHP-Y7L**

To institute proceedings, please send a copy of this form and the Arbitration Agreement to the opposing party.

**Your dispute has been filed in accordance with:** Commercial Dispute Resolution Procedures

**This Claim has Been Filed For:** Arbitration

**Filing Fee:** $950.00

## Additional Claim Information

**Claim Amount:** $75,000.00

**Claim Description:** Default on promissory note. See uploaded document.

**Arbitration Clause:** Any dispute arising out of or in connection with this Note shall be conclusively resolved by final and binding arbitration conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in force unless the parties hereto mutually agree otherwise in writing; provided, however, that is such dispute involves issues related to insurance the arbitrator or arbitrators involved shall have expertise in insurance matters. The arbitration shall take place in Kent County, Rhode Island. The determination of the arbitrator or arbitrators shall be final and binding upon the parties hereto, and judgment upon the arbitration award may be entered in any court of competent jurisdiction. The arbitrator or arbitrators shall prepare a written report containing a reasonably detailed analysis of their decision within thirty (30) days after the appointment of the final arbitrator to be appointed. The arbitration provisions of this Note shall survive the expiration or termination of this Note for any reason.

**Hearing Locale Requested:** San Francisco , CA

**Contract Date:** 11/01/2005

**Number of Neutrals:** 1

## Claimant

**Kevin Quaintance**

**Type of Business:** Employee

**Name:** Kevin Quaintance

**Company Name:**

**Address:** 2701 Laramie Gate Cir.
Pleasanton, CA 94566

**Tel#:** 510-393-3370

**Fax#:** 831-597-9880

**Email:** kevin@quaintance.net

**Include In Caption:** Individual

**Representatives**

## Respondent

**Erwin Vahlsing-ICOA Corporation**

**Type of Business:** Service / Product Provider

**Name:** Erwin Vahlsing

**Company Name:** ICOA Corporation

**Address:** 111 Airport Rd.
Suite 100
Warwick, RI 02889

**Tel#:** 401-352-2310

**Fax#:** 401-352-2310

**Email:** evahlsing@icoacorp.com

**Include In Caption:** Both

**Representatives**