# EXHIBIT D

# COVER PAGE

This page is intentionally blank. Exhibit begins on next page.

**THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT") OR ANY STATE SECURITIES LAWS AND THIS NOTE MAY NOT BE OFFERED, SOLD, TRANSFERRED, PLEDGED OR OTHERWISE DISPOSED OF EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACT AND SUCH LAWS OR AN EXEMPTION FROM REGISTRATION UNDER SUCH ACT AND SUCH LAWS WHICH, IN THE OPINION OF COUNSEL SATISFACTORY TO THE COMPANY, IS AVAILABLE.**

**Promissory Note**

$ 15,196.21 November 1, 2005

**FOR VALUE RECEIVED, ICOA, INC.**, a Nevada corporation having an office at 111 Airport Road, Warwick, Rhode Island 02889 (the "Company"), hereby promises to pay to Kevin Quaintance, (the "Holder") or to Graebel Van Lines, Dept. 1731, Denver, CO 80291-1731 (the "Creditor") for the account # 142005/942of the holder, the principal sum of $15,196.21 together with interest from the date hereof until the principal hereof and all interest thereon shall have been paid.

The Company shall pay to the Holder or Creditor $1,121 per month until the principal hereof and all interest thereon shall have been paid.

All or some of the principal amount of this Note, and all accrued interest thereon, may be prepaid by the Company, without premium or penalty, at any time without notice.

All payments of principal and interest shall be made to the Holder or Creditor in lawful currency of the United States of America to the address set forth above or such other address as to which the Holder shall notify the Company in writing.

If the Company:

(i) shall fail to make a payment of principal or interest when due and such failure shall continue for thirty (30) days after notice of such failure; or

(ii) shall make an assignment for the benefit of creditors, file a petition in bankruptcy, be adjudicated insolvent or bankrupt, suffer an order for relief under any federal bankruptcy law, petition or apply to any tribunal for the appointment of a custodian, receiver or any trustee for the Company or any substantial part of its assets; or

(iii) shall commence any proceeding under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect; or if there shall have been filed any such petition or application, or any such proceeding shall have been commenced against the Company, which remains undismissed, unstayed or unbonded for a period of thirty (30) days or more; or

(iv) by any act or omission shall indicate consent to, approve or acquiescence in any such petition, application or proceeding or the appointment of a custodian, receiver or any trustee for all or any substantial part of its properties; or

(v) shall allow such custodianship, receivership, or trusteeship to continue undischarged, unstayed or unbonded for a period of thirty (30) days or more; or

(vi) violates any term or provision of this Note, or fails to honor any covenant under this Note, and same remains uncured for a period of thirty (30) days after notice thereof by the Holder of this Note;

then and in any such event, the outstanding principal amount of this Note, together with all accrued and unpaid interest thereon, shall be and become immediately due and payable and the Holder shall have the rights specified under the Security Agreement between the Holder and the Company of even date herewith..

All notices and other communications provided for herein shall be sent by registered or certified mail, return receipt requested, or by personal delivery or via a nationally recognized overnight courier to the Holder or the Company, at their respective addresses as set forth herein, or to such other address as to which either party may advise the other by notice given in accordance with this provision. All such notices shall be deemed given upon the earlier of receipt or within five (5) business days of mailing if receipt is refused.

Notwithstanding any other provision of this Note, interest under this Note shall not exceed the maximum rate permitted by law; and if any amount is paid under this Note as interest in excess of such maximum rate, then the amount so paid will not constitute interest but will constitute a prepayment on account of the principal amount of this Note. If at any time the interest rate under this Note would, but for the provision of the preceding sentence, exceed the maximum rate permitted by law, then the outstanding principal balance of this Note shall, on demand by the holder of this Note, become and be due and payable.

All payments under this Note shall be made without defense, set-off or counterclaim, free and clear of and without deduction for any taxes of any nature now or hereafter imposed.

The undersigned agrees to pay on demand all expenses of collecting and enforcing this Note, including, without limitation, reasonable expenses and fees of legal counsel, court costs and the cost of appellate proceedings.

The provisions of this Note shall in all respects be construed according to, and the rights and liabilities of the parties hereto and shall in all respects be governed by, the laws of the State of Rhode Island. This Note shall be deemed a contract made under the laws of the State of Rhode Island to be fully performed therein, and the validity of this Note and all rights an liabilities hereunder shall be determined under the laws of said State without reference to the conflicts of laws provisions thereof. Any dispute arising out of or in connection with this Note shall be conclusively resolved by final and binding arbitration conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in force unless the parties hereto mutually agree otherwise in writing; provided, however, that is such dispute involves issues related to insurance the arbitrator or arbitrators involved shall have expertise in insurance matters. The arbitration shall take place in Kent County, Rhode Island. The

determination of the arbitrator or arbitrators shall be final and binding upon the parties hereto, and judgment upon the arbitration award may be entered in any court of competent jurisdiction. The arbitrator or arbitrators shall prepare a written report containing a reasonably detailed analysis of their decision within thirty (30) days after the appointment of the final arbitrator to be appointed. The arbitration provisions of this Note shall survive the expiration or termination of this Note for any reason.

If any amount hereunder is payable on a day which is a Saturday, Sunday, legal holiday or a day on which banking institutions in Warwick, Rhode Island are authorized or required by law or by local proclamation to close, the due date thereof shall be extended to the next succeeding business day and interest thereon shall accrue during the period of such extension at the rate provided herein.

This Note may be amended only by a written instrument executed by the Company and the Holder.

**IN WITNESS WHEREOF**, ICOA, Inc. has caused this Promissory Note to be executed in its corporate name by its President, thereunto duly authorized.

Dated: November 1, 2005

ICOA, INC.

By: ______________________
Richard Schiffmann
President

# EXHIBIT E

# COVER PAGE

---

This page is intentionally blank. Exhibit begins on next page.

**THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT") OR ANY STATE SECURITIES LAWS AND THIS NOTE MAY NOT BE OFFERED, SOLD, TRANSFERRED, PLEDGED OR OTHERWISE DISPOSED OF EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACT AND SUCH LAWS OR AN EXEMPTION FROM REGISTRATION UNDER SUCH ACT AND SUCH LAWS WHICH, IN THE OPINION OF COUNSEL SATISFACTORY TO THE COMPANY, IS AVAILABLE.**

**Promissory Note**

$14, 246.78 November 1, 2005

**FOR VALUE RECEIVED, ICOA, INC.**, a Nevada corporation having an office at 111 Airport Road, Warwick, Rhode Island 02889 (the "Company"), hereby promises to pay to Kevin Quaintance, (the "Holder") or to US Bank – Visa, PO Box 790408, St. Louis, MO 63179 (the "Creditor") for the account # 3727-168440-11008 of the holder, the principal sum of $14, 246.78 together with interest from the date hereof until the principal hereof and all interest thereon shall have been paid.

The Company shall pay to the Holder or Creditor $300 per month due on the first day of each month, until the principal hereof and all interest thereon shall have been paid.

All or some of the principal amount of this Note, and all accrued interest thereon, may be prepaid by the Company, without premium or penalty, at any time without notice.

All payments of principal and interest shall be made to the Holder or Creditor in lawful currency of the United States of America to the address set forth above or such other address as to which the Holder shall notify the Company in writing.

If the Company:

(i) shall fail to make a payment of principal or interest when due and such failure shall continue for thirty (30) days after notice of such failure; or

(ii) shall make an assignment for the benefit of creditors, file a petition in bankruptcy, be adjudicated insolvent or bankrupt, suffer an order for relief under any federal bankruptcy law, petition or apply to any tribunal for the appointment of a custodian, receiver or any trustee for the Company or any substantial part of its assets; or

(iii) shall commence any proceeding under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect; or if there shall have been filed any such petition or application, or any such proceeding shall have been commenced against the Company, which remains undismissed, unstayed or unbonded for a period of thirty (30) days or more; or

(iv) by any act or omission shall indicate consent to, approve or acquiescence in any such petition, application or proceeding or the appointment of a custodian, receiver or any trustee for all or any substantial part of its properties; or

(v) shall allow such custodianship, receivership, or trusteeship to continue undischarged, unstayed or unbonded for a period of thirty (30) days or more; or

(vi) violates any term or provision of this Note, or fails to honor any covenant under this Note, and same remains uncured for a period of thirty (30) days after notice thereof by the Holder of this Note;

then and in any such event, the outstanding principal amount of this Note, together with all accrued and unpaid interest thereon, shall be and become immediately due and payable and the Holder shall have the rights specified under the Security Agreement between the Holder and the Company of even date herewith..

All notices and other communications provided for herein shall be sent by registered or certified mail, return receipt requested, or by personal delivery or via a nationally recognized overnight courier to the Holder or the Company, at their respective addresses as set forth herein, or to such other address as to which either party may advise the other by notice given in accordance with this provision. All such notices shall be deemed given upon the earlier of receipt or within five (5) business days of mailing if receipt is refused.

Notwithstanding any other provision of this Note, interest under this Note shall not exceed the maximum rate permitted by law; and if any amount is paid under this Note as interest in excess of such maximum rate, then the amount so paid will not constitute interest but will constitute a prepayment on account of the principal amount of this Note. If at any time the interest rate under this Note would, but for the provision of the preceding sentence, exceed the maximum rate permitted by law, then the outstanding principal balance of this Note shall, on demand by the holder of this Note, become and be due and payable.

All payments under this Note shall be made without defense, set-off or counterclaim, free and clear of and without deduction for any taxes of any nature now or hereafter imposed.

The undersigned agrees to pay on demand all expenses of collecting and enforcing this Note, including, without limitation, reasonable expenses and fees of legal counsel, court costs and the cost of appellate proceedings.

The provisions of this Note shall in all respects be construed according to, and the rights and liabilities of the parties hereto and shall in all respects be governed by, the laws of the State of Rhode Island. This Note shall be deemed a contract made under the laws of the State of Rhode Island to be fully performed therein, and the validity of this Note and all rights an liabilities hereunder shall be determined under the laws of said State without reference to the conflicts of laws provisions thereof. Any dispute arising out of or in connection with this Note shall be conclusively resolved by final and binding arbitration conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in force unless the parties hereto mutually agree otherwise in writing; provided, however, that is such dispute involves issues related to insurance the arbitrator or arbitrators involved shall have expertise in insurance matters. The arbitration shall take place in Kent County, Rhode Island. The

determination of the arbitrator or arbitrators shall be final and binding upon the parties hereto, and judgment upon the arbitration award may be entered in any court of competent jurisdiction. The arbitrator or arbitrators shall prepare a written report containing a reasonably detailed analysis of their decision within thirty (30) days after the appointment of the final arbitrator to be appointed. The arbitration provisions of this Note shall survive the expiration or termination of this Note for any reason.

If any amount hereunder is payable on a day which is a Saturday, Sunday, legal holiday or a day on which banking institutions in Warwick, Rhode Island are authorized or required by law or by local proclamation to close, the due date thereof shall be extended to the next succeeding business day and interest thereon shall accrue during the period of such extension at the rate provided herein.

This Note may be amended only by a written instrument executed by the Company and the Holder.

**IN WITNESS WHEREOF,** ICOA, Inc. has caused this Promissory Note to be executed in its corporate name by its President, thereunto duly authorized.

Dated: November 1, 2005

ICOA, INC.

By: ______________________
Richard Schiffmann
President

# EXHIBIT F

# COVER PAGE

---

This page is intentionally blank. Exhibit begins on next page.

**SECURITY AGREEMENT**

THIS SECURITY AGREEMENT (the "Agreement"), is entered into and made effective as of November 1, 2005, by and between ICOA, INC., (the "Company"), and the Joel Stalder and Kevin Quaintance (each a "Secured Party").

WHEREAS, the Company is issuing to each Secured Party the following notes: Joel Stalder $102,000 ( the "Stalder Note"), Kevin Quaintance $94,000 ( the "Quaintance Note"), Kevin Quaintance $14,246.78 ( the "Visa Note") and Kevin Quaintance $15,196.21 ( the "Graebel Note") ( the four notes together referred to as the "Notes");

WHEREAS, to induce the Secured Party to accept the Notes, the Company hereby grants to the Secured Party a security interest in and to the pledged property identified on Exhibit "A" hereto (collectively referred to as the "Pledged Property") until the satisfaction of the Obligations, as defined herein below.

WHEREAS, the Company has entered into a Security Agreement with Cornell Capital on or about October 27, 2005 (the "Cornell Agreement") under which the Pledged Property and other assets of the Company are pledged to Cornell Capital,

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, and for other good and valuable consideration, the adequacy and receipt of which are hereby acknowledged, the parties hereto hereby agree as follows:

1. Obligations
    a. The obligations secured hereby are the Notes (collectively, the "Obligations").
    b. Each obligation of the Company hereunder is subject to and subordinated to the obligations of the Company under the Cornell Agreement.

2. Pledged Property.
    a. Subject to the Company's obligations under the Cornell Agreement, the Company hereby pledges to the Secured Party, and creates in the Secured Party for its benefit, a security interest for such time until the Obligations are paid in full, in and to all of the property of the Company as set forth in Exhibit "A" attached hereto (collectively, the "Pledged Property"):
    b. The Pledged Property, as set forth in Exhibit "A" attached hereto, and the products thereof and the proceeds of all such items are hereinafter collectively referred to as the "Pledged Collateral."
    c. Simultaneously with the execution and delivery of this Agreement, the Company shall make, execute, acknowledge, file, record and deliver to the Secured Party any documents reasonably requested by the Secured Party to perfect its security interest in the Pledged Property, and the Secured Party shall hold such documents and instruments as secured party, subject to the terms and conditions contained herein.

3. Default
    a. So long as no Event of Default (as hereinafter defined) shall have occurred and be continuing:

   i. the Company shall be entitled to exercise any and all rights pertaining to the Pledged Property or any part thereof for any purpose not inconsistent with the terms hereof; and
   ii. the Company shall be entitled to receive and retain any and all payments paid or made in respect of the Pledged Property.

b. Upon the occurrence and during the continuance of an Event of Default:
   i. the Secured Party who shall thereupon have the sole right to exercise such rights and to receive and hold as Pledged Collateral such payments; and
   ii. the Secured Party in its sole discretion shall be authorized to sell any or all of the Pledged Property at public or private sale in order to recoup all of the outstanding principal plus accrued interest owed pursuant to the Note as described herein

c. Each of the following events shall constitute a default under this Agreement (each an "Event of Default"):
   i. any default, whether in whole or in part, shall occur in the payment to the Secured Party of principal, interest or other item comprising the Obligations as and when due;
   ii. any default, whether in whole or in part, shall occur in the due observance or performance of any obligations or other covenants, terms or provisions to be performed under this Agreement or the Notes.

d. Upon the occurrence of an Event of Default, the Company hereby appoints the Secured Party as its attorney-in-fact, with full authority in the place and stead of the Company and in the name of the Company or otherwise, from time to time in the Secured Party's discretion to take any action and to execute any instrument which the Secured Party may reasonably deem necessary to accomplish the purposes of this Agreement, including, without limitation, to receive and collect all instruments made payable to the Company representing any payments in respect of the Pledged Collateral or any part thereof and to give full discharge for the same. The Secured Party may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Pledged Property as and when the Secured Party may determine. To facilitate collection, the Secured Party may notify account debtors and obligors on any Pledged Property or Pledged Collateral to make payments directly to the Secured Party.

e. Upon the occurrence of an Event of Default, the Secured Party shall,: (i) be entitled to receive all distributions with respect to the Pledged Collateral, (ii) to cause the Pledged Property to be transferred into the name of the Secured Party or its nominee, (iii) to dispose of the Pledged Property, and (iv) to realize upon any and all rights in the Pledged Property then held by the Secured Party.

f. Upon the occurrence of an Event of Default, in addition to any rights and remedies available at law or in equity, the following provisions shall govern the Secured Party's right to realize upon the Pledged Property:
   i. Any item of the Pledged Property may be sold for cash or other value in any number of lots at brokers board, public auction or private sale and may be sold without demand, advertisement or notice (except that the Secured Party shall give the Company ten (10) days' prior written notice of the time and place or of the time after which a private sale may be made (the "Sale Notice")), which notice period shall in any event is hereby agreed to be commercially reasonable. At any sale or sales of the Pledged Property, the Company may bid for and purchase the whole or any part of the Pledged Property and, upon compliance with the terms of

such sale, may hold, exploit and dispose of the same without further accountability to the Secured Party. The Company will execute and deliver, or cause to be executed and delivered, such instruments, documents, assignments, waivers, certificates, and affidavits and supply or cause to be supplied such further information and take such further action as the Secured Party reasonably shall require in connection with any such sale.

ii. Any cash being held by the Secured Party as Pledged Collateral and all cash proceeds received by the Secured Party in respect of, sale of, collection from, or other realization upon all or any part of the Pledged Collateral shall be applied as to the payment of the Obligations then due and unpaid, with the balance, if any, to the person or persons entitled thereto, including, without limitation, the Company.

g. In addition to all of the rights and remedies which the Secured Party may have pursuant to this Agreement, the Secured Party shall have all of the rights and remedies provided by law. The Company agrees that it shall be liable for any reasonable fees, expenses and costs incurred by the Secured Party in connection with enforcement, collection and preservation of the Transaction Documents, including, without limitation, reasonable legal fees and expenses, and such amounts shall be deemed included as Obligations secured hereby.

h. In case of the pendency of any receivership, insolvency, liquidation, bankruptcy, reorganization, arrangement, adjustment, composition or other judicial proceeding relating to the Company or the property of the Company or of such other obligor or its creditors, the Secured Party (irrespective of whether the Obligations shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Secured Party shall have made any demand on the Company for the payment of the Obligations), subject to the rights of Previous Security Holders, shall be entitled and empowered, by intervention in such proceeding or otherwise:

i. to file and prove a claim for the whole amount of the Obligations and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Secured Party (including any claim for the reasonable legal fees and expenses and other expenses paid or incurred by the Secured Party permitted hereunder and of the Secured Party allowed in such judicial proceeding), and

ii. to collect and receive any monies or other property payable or deliverable on any such claims and to distribute the same; and any custodian, receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by the Secured Party to make such payments to the Secured Party and, in the event that the Secured Party shall consent to the making of such payments directed to the Secured Party, to pay to the Secured Party any amounts for expenses due it hereunder.

4. Warranties

a. Each of the parties hereto represents and warrants that it has taken all action necessary to authorize the execution, delivery and performance of this Agreement and the transactions contemplated hereby; and upon execution and delivery, this Agreement shall constitute a valid and binding obligation of the respective party, subject to applicable bankruptcy, insolvency, reorganization,

moratorium and similar laws affecting creditors' rights or by the principles governing the availability of equitable remedies.

b. The Company warrants and represents that it is the legal and beneficial owner of the Pledged Property free and clear of any lien, security interest, option or other charge or encumbrance except for the security interest created by this Agreement and the security interest created by the Security Agreement between the Company and Cornell Capital, dated on or about October 27, 2005.

5. Covenants

The Company covenants and agrees that, from the date hereof and until the Obligations have been fully paid and satisfied, unless the Secured Party shall consent otherwise in writing:

a. The Company shall do, or cause to be done, all things, or proceed with due diligence with any actions or courses of action, that may be reasonably necessary (i) to carry on the Company's business as now conducted, and (ii) to execute or deliver this Agreement or any other document delivered in connection herewith, including, without limitation, any UCC-1 Financing Statements required by the Secured Party (which other loan instruments collectively shall be referred to as the "Loan Instruments") to which it is or will be a party, or perform any of its obligations hereunder or thereunder.

b. The Company shall maintain its books, accounts and records in accordance with generally accepted accounting principles consistently applied, and permit the Secured Party, its officers and employees and any professionals designated by the Secured Party in writing, at any time to visit and inspect the Pledged Property.

c. The Company shall defend and enforce its right, title and interest in and to any part of the Pledged Property; the Company shall defend the Secured Party's right, title and interest in and to each and every part of the Pledged Property, each against all manner of claims and demands on a timely basis to the full extent permitted by applicable law.

d. Except pursuant to the Cornell Agreement, the Company shall not directly or indirectly make, create, incur, assume or permit to exist any assignment, transfer, pledge, mortgage, security interest or other lien or encumbrance of any nature in, to or against any part of the Pledged Property or assign, pledge or in any way transfer or encumber its right to receive any income or other distribution or proceeds from any part of the Pledged Property; or enter into any sale-leaseback financing respecting any part of the Pledged Property as lessee, or cause or assist the inception or continuation of any of the foregoing.

6. Miscellaneous

a. All notices or other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be considered as duly given on: (a) the date of delivery, if delivered in person, by nationally recognized overnight delivery service or (b) five (5) days after mailing if mailed from within the continental United States by certified mail, return receipt requested to the party entitled to receive the same:

| | |
|---|---|
| If to the Secured Party: | Kevin Quaintance<br>16 Timberland Dr.<br>Lincoln, RI 02865 |
| And if to the Company: | ICOA, Inc,<br>111 Airport Road<br>Warwick, Rhode Island 02889 |

Attention: CFO
Telephone: (401) 352-2300
Facsimile: (401) 352 2323

Any party may change its address by giving notice to the other party stating its new address. Commencing on the tenth (10th) day after the giving of such notice, such newly designated address shall be such party's address for the purpose of all notices or other communications required or permitted to be given pursuant to this Agreement.

(b) If any provision of this Agreement shall be held invalid or unenforceable, such invalidity or unenforceability shall attach only to such provision and shall not in any manner affect or render invalid or unenforceable any other severable provision of this Agreement, and this Agreement shall be carried out as if any such invalid or unenforceable provision were not contained herein.

(c) In the event of an Event of Default, the Company will pay to the Secured Party the amount of any and all reasonable expenses, including the reasonable fees and expenses of its counsel, which the Secured Party may incur in connection with: (i) the custody or preservation of, or the sale, collection from, or other realization upon, any of the Pledged Property; (ii) the exercise or enforcement of any of the rights of the Secured Party hereunder or (iii) the failure by the Company to perform or observe any of the provisions hereof.

(d) The Secured Party's delay or failure at any time or times hereafter to require strict performance by Company of any undertakings, agreements or covenants shall not waiver, affect, or diminish any right of the Secured Party under this Agreement to demand strict compliance and performance herewith. Any waiver by the Secured Party of any Event of Default shall not waive or affect any other Event of Default, whether such Event of Default is prior or subsequent thereto and whether of the same or a different type. None of the undertakings, agreements and covenants of the Company contained in this Agreement, and no Event of Default, shall be deemed to have been waived by the Secured Party, nor may this Agreement be amended, changed or modified, unless such waiver, amendment, change or modification is evidenced by an instrument in writing specifying such waiver, amendment, change or modification and signed by the Secured Party.

(e) This Agreement shall create a continuing security interest in the Pledged Property and shall: (i) remain in full force and effect until payment in full of the Obligations; and (ii) be binding upon the Company and its successors and heirs and (iii) inure to the benefit of the Secured Party and its successors and assigns. Upon the payment or satisfaction in full of the Obligations, the Company shall be entitled to the return, at its expense, of such of the Pledged Property as shall not have been sold or otherwise applied pursuant to the terms hereof.

(f) Each party hereto acknowledges and agrees that it has received or has had the opportunity to receive independent legal counsel of its own choice and that it has been sufficiently apprised of its rights and responsibilities with regard to the substance of this Agreement.

(g) This Agreement shall be governed by and interpreted in accordance with the laws of the State of Rhode Island without regard to the principles of conflict of laws. The parties further agree that any action between them shall be heard in Kent County, Rhode Island, and

expressly consent to the jurisdiction and venue of the Courts of Rhode Island, for the adjudication of any civil action asserted pursuant to this Paragraph.

(h) This Agreement constitutes the entire agreement among the parties and supersedes any prior agreement or understanding among them with respect to the subject matter hereof.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ICOA, INC.**

Name: RICHARD SCHIFFMANN

Title: CEO + PRESIDENT

**SECURED PARTY:**

Kevin Quaintance

Joel Stalder

expressly consent to the jurisdiction and venue of the Courts of Rhode Island, for the adjudication of any civil action asserted pursuant to this Paragraph.

(h) This Agreement constitutes the entire agreement among the parties and supersedes any prior agreement or understanding among them with respect to the subject matter hereof.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ICOA, INC.**

____________________

Name:

Title:

**SECURED PARTY:**

____________________

Kevin Quaintance

____________________

Joel Stalder

**EXHIBIT A**
**DEFINITION OF PLEDGED PROPERTY**

For the purpose of securing prompt and complete payment and performance by the Company of all of the Obligations, the Company unconditionally and irrevocably hereby grants to the Secured Party a continuing security interest in and to, and lien upon, the following Pledged Property of the Company, subject to the obligations of the Company under the Cornell Agreement:

all accounts and other receivables, instruments or other forms of obligations and rights to payment of AuthDirect, Inc. (herein collectively referred to as "Accounts"), together with the proceeds thereof, and all proceeds of any insurance thereon, and all guarantees, securities and liens which the Company may hold for the payment of any such Accounts including, without limitation, all rights of stoppage in transit, replevin and reclamation and as an unpaid vendor and/or lienor, all of which the Company represents and warrants will be bona fide and existing obligations of its respective customers, arising in the ordinary course of business and all products and proceeds (including, without limitation, insurance proceeds) from the above-described Pledged Property.

# EXHIBIT G

# COVER PAGE

---

This page is intentionally blank. Exhibit begins on next page.

**Kevin Quaintance**
2701 Laramie Gate Cir.
Pleasanton, CA 94566

**Phone:** (401) 575-6939
**Fax:** (831) 597-9880
**E-mail:** kevin@quaintance.net

## *Statement of Account*

**Date:** February 23, 2007

**Debtor:** ICOA, Inc.
C/O Erwin Vahlsing
111 Airport Rd. Suite 100
Warwick, RI 02889

| Type | Date | Invoice # | Description | Amount | Payment | Balance |
|---|---|---|---|---|---|---|
| Quaintance Note | 11/15/2005 | | | $ 94,000.00 | | 94,000.00 |
| | 11/15/2005 | | Payment | | 5,000.00 | (5,000.00) |
| | 7/7/2006 | | January Payment | | 5,000.00 | (5,000.00) |
| | 7/26/2006 | | Partial Feb payment | | 1,250.00 | (1,250.00) |
| | 9/22/2006 | | Acct Levy | | 12,008.00 | (12,008.00) |
| | | | | | | |
| | | | | | | - |
| Interest Accrued | | | Interest Period | | | - |
| | 2/1/2006 | | January | 890.00 | | 890.00 |
| | 3/1/2006 | | February | 890.00 | | 890.00 |
| | 4/1/2006 | | March | 890.00 | | 890.00 |
| | 5/1/2006 | | april | 890.00 | | 890.00 |
| | 6/1/2006 | | May | 890.00 | | 890.00 |
| | 7/1/2006 | | June | 890.00 | | 890.00 |
| | 8/1/2006 | | July | 827.50 | | 827.50 |
| | 9/1/2006 | | August | 827.50 | | 827.50 |
| | 10/1/2006 | | September | 707.42 | | 707.42 |
| | 11/1/2006 | | October | 707.42 | | 707.42 |
| | 12/1/2006 | | November | 707.42 | | 707.42 |
| | 1/1/2007 | | December | 707.42 | | 707.42 |
| | | | | | | - |
| Penalties Accrued | | | Penalty Period | | | - |
| | 2/23/2007 | | January | 20,800.00 | | 20,800.00 |
| | 2/23/2007 | | February | 27,400.00 | | 27,400.00 |
| | 2/23/2007 | | March | 23,400.00 | | 23,400.00 |
| | 2/23/2007 | | april | 40,800.00 | | 40,800.00 |
| | 2/23/2007 | | May | 36,800.00 | | 36,800.00 |
| | 2/23/2007 | | June | 32,200.00 | | 32,200.00 |
| | 2/23/2007 | | July | 27,800.00 | | 27,800.00 |
| | 2/23/2007 | | August | 23,600.00 | | 23,600.00 |
| | 2/23/2007 | | September | 19,000.00 | | 19,000.00 |
| | 2/23/2007 | | October | 14,800.00 | | 14,800.00 |
| | 2/23/2007 | | November | 10,400.00 | | 10,400.00 |
| | 2/23/2007 | | December | 6,000.00 | | 6,000.00 |
| | 2/23/2007 | | January | 1,925.00 | | 1,925.00 |
| | | | | | | - |
| Expenses Owed | | | | | | - |
| | 1/2006 | | Previous Accrued | 2,750.00 | | 2,750.00 |
| | 5/2006 | | ATL Trip 5/2006 | 400.00 | | 400.00 |
| | 6/2006 | | Fresno Trip | 250.00 | | 250.00 |
| | | | | | | - |
| Consulting Fees | | | | | | - |
| | 4/15/2006 | | Consulting | 2,500.00 | | 2,500.00 |
| | 5/15/2006 | | Consulting | 2,500.00 | | 2,500.00 |
| | 6/15/2006 | | Consulting | 2,500.00 | | 2,500.00 |
| | 7/15/2006 | | Consulting | 1,250.00 | | 1,250.00 |
| | | | | | | - |
| US Bank Note | | | | | | - |
| | 11/1/2006 | | Promissory Note Value | 14,246.78 | | 14,246.78 |
| | | | | | | - |
| Graebel Note | | | | | | - |
| | 11/1/2006 | | Promissory Note Value | 15196.21 | | 15,196.21 |
| | | | | | | - |
| | | | | | **Total** | $ 407,084.67 |

# EXHIBIT H

# COVER PAGE

This page is intentionally blank. Exhibit begins on next page.

Kevin Quaintance
2701 Laramie Gate Cir.
Pleasanton, CA 94566
401-575-6939 Mobile

August 17, 2006

ICOA, Inc.
c/o Erwin Vahlsing
111 Airport Road
Warwick, RI 02889

**RE: DEFAULT ON PROMISSORY NOTES BY ICOA, INC.**

Dear Mr. Vahlsing:

I am writing in regard to ICOA, Inc.'s failure to honor its obligations on the promissory notes issued to myself and Joel Stalder. As a result of these failures, we are exercising our rights under Section 3(d) of the Security Agreement dated November 1, 2005, with a levy of the Authorize.net merchant account on August 25, 2006 unless we are able to come to a resolution on our past due balances.

Although we regret that it has come to this, ICOA, Inc.'s repeated failures to pay as agreed have forced us to take this action.

Please contact me immediately. If I do not hear from you, we will proceed accordingly.

Sincerely,

Kevin Quaintance

cc: Joel Stalder, Jeffrey Burke, Esq.

# EXHIBIT I

# COVER PAGE

---

This page is intentionally blank. Exhibit begins on next page.

FedEx Express

FedEx Express
Customer Support Trace
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116

U.S. Mail: PO Box 727
Memphis, TN 38194-4643

Telephone: 901-369-3600

February 22,2007

Dear Customer:

The following is the proof of delivery you requested with the tracking number **790037690960**.

## Delivery Information:

| | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivery location:** | 111 AIRPORT RD |
| **Signed for by:** | P.MARTIN | **Delivery date:** | Aug 17, 2006 11:16 |
| **Service type:** | Standard Overnight | | |



## Shipping Information:

| | | | |
|---|---|---|---|
| **Tracking number:** | 790037690960 | **Ship date:** | Aug 16, 2006 |

**Recipient:**
ERWIN VAHLSING
ICOA CORP
111 AIRPORT RD

WARWICK, RI 02889 US

**Shipper:**
KEVIN QUAINTANCE

2701 LARAMIE GATE CIR

PLEASANTON, CA 94566 US

Thank you for choosing FedEx Express.

FedEx Worldwide Customer Service
1.800.GoFedEx 1.800.463.3339

Receipt for levy notice.

# EXHIBIT J

# COVER PAGE

---

This page is intentionally blank. Exhibit begins on next page.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ICOA, INC.,<br>Plaintiff<br><br>vs.<br><br>KEVIN QUAINTANCE,<br>Defendant | :<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 07-069 S |

**DECLARATION OF JOEL STALDER**

I, Joel Stalder, was formerly a shareholder and officer of AuthDirect, Inc., which was acquired by ICOA, Inc. in 2004. I originally registered the domain names "authdirect.com" and "authdirect.net" in my own name, and with my own personal funds.

My understanding was that upon acquisition, ownership of the domain names were not to be transferred to ICOA, Inc. until it had fully paid all proceeds owed under the acquisition.

I declare the foregoing under penalty of perjury this 23rd day of February, 2007.

Joel Stalder

# EXHIBIT K

# COVER PAGE

---

This page is intentionally blank. Exhibit begins on next page.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ICOA, INC., Plaintiff | : | |
| vs. | : | C.A. No. 07-069 S |
| KEVIN QUAINTANCE, Defendant | : | |

**DECLARATION OF PAM BROWN**

I, Pamela D. Brown, was co-founder and a former shareholder and officer of Airport Network Solutions, Inc., founded in 2002 and acquired by ICOA, Inc. in 2004. My former partner, Rick Schiffmann, originally registered the domain names "airportwins.com" and "airportnetworksolutions.com" in his name, with personal funds, two years prior to the ICOA acquisition. Mr. Quaintance later re-located these domains at my request.

Upon the acquisition, ownership of the domain names were not to be transferred to ICOA, Inc. until it had fully paid all proceeds owed under the terms of the acquisition. ICOA, Inc. has not paid as agreed for the acquisition and it's claims that it was, or is, entitled to own the domain names is not correct.

Additionally, I believe it is relevant to state that I recently was awarded a large arbitration settlement against ICOA which I have not been able to collect. I believe this award has prompted ICOA's actions against Mr. Quaintance in order to avoid his efforts at the arbitration process prescribed within ICOA, Inc.'s contracts.

I declare the foregoing under penalty of perjury this 23rd day of February, 2007.

Pamela D Brown

Pamela D. Brown