UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ICOA, INC.,
*Plaintiff*

VS: C.A. No. 07-069 S

KEVIN QUAINTANCE,
*Defendant*

VS:

ICOA, INC.
ERWIN VAHSLING, and
GEORGE STROUTHOPOLOUS
*Third Party Defendants*

DEFENDANT / COUNTERCLAIM THIRD PARTY PLAINTIFF KEVIN QUAINTANCE'S MEMORANDUM IN SUPPORT OF HIS OBJECTION TO PLAINTIFF/COUNTERCLAIM DEFENDANT ICOA, INC. AND THIRD PARTY DEFENDANTS ERWIN VAHSLING AND GEORGE STROUTHOPOULOS' MOTION TO REMOVE ENTRY OF DEFAULT AND TO STRIKE THE REPLY TO THE COUNTERCLAIM AND THE ANSWER TO THE THIRD PARTY COMPLAINT

Facts/Travel

The within case was initiated by Plaintiff ICOA, Inc.'s Complaint and Request for a restraining order claiming that Defendant Kevin Quaintance unlawfully reclaimed the rights to domain names allegedly transferred to ICOA in a sale of stock from Quaintance to ICOA. Furthermore, ICOA claimed that Quaintance executed a wrongful levy of funds pledged from ICOA to Quaintance as part of the original sales price. Quaintance had executed a levy of the funds on the basis of a security instrument drafted by ICOA to secure the overdue debt due to Quaintance from ICOA in the original sales transaction. In its Complaint, ICOA, Inc. candidly admitted that it owed money to Quaintance, but claimed because of financial considerations it could not pay its debt. See Compl ¶ 10.

ICOA claimed in its request for a restraining order that it could not operate without the domain names, and that Quaintance effectively seized control of the domain names preventing ICOA from providing access to wireless internet services in defined public areas. Quaintance generally denied any unlawful reclamation, however, in a February 23, 2007 conference with Judge Smith, Quaintance, through counsel, agreed to a non-prejudicial order that he would not challenge ICOA's right to assert ownership over the domain names, subject to resolution of the claims and anticipated counterclaim.

During the February 23, 2007 conference, it was agreed that an early settlement conference could help bring the matter to resolution. The case was assigned to Magistrate Judge Lovegreen, originally for May 15, 2007, but at the request of Defendant's Counsel, and with the agreement of the Court and Plaintiff's counsel, continued to May 30, 2007. In the meantime, Defendant timely filed its Answer and a Counterclaim for breach of contract, and on book account based on the payment due pursuant to the terms of a promissory note and related documents. A motion to amend the counterclaim and file a third party complaint against George Strouthopulos and Erwin Vahlsing was filed and granted prior to the May 30 settlement conference. The third party complaint against the principals of ICOA, Inc. allege fraud and misrepresentations in the initial transaction which materially affected the transaction, and which Mr. Quaintance relied upon in deciding whether to sell his shares of stock to ICOA, Inc.

On May 30, 2007 the Court held its first settlement conference. Plaintiff's

counsel, defense counsel, Kevin Quaintance who flew in from California, and Erwin Vahlsing, third party defendant and principal of ICOA, INC, attended the conference.

Magistrate Judge Lovegreen successfully obtained conditional commitments for settlement from the parties that would involve a transfer of funds from ICOA to Quaintance. The amount of the settlement was within a narrow range, conditioned upon approval from ICOA's secured lender Cornell Funding. ICOA's counsel represented that information regarding the amount of settlement was expected the following week.

A June 14, 2007 review date was scheduled to determine the progress of the settlement. At the June 14 review, defense counsel was told again that the settlement was intact, and that a lenders review committee was scheduled to meet June 19 at which time a final decision as to the amounts would be made. Defense counsel, expressing concerns over the time period was asked to remain patient, and that the final decision would be known on June 19. Magistrate Judge Lovegreen expressed his willingness to oversee further discussions before June 28, 2007, as necessary, upon request.

On June 21, defense counsel inquired of plaintiff's counsel as to the status of the June 19 review commission. Telephone inquiries were made, and when there was no response, an email message forwarded to Plaintiff's counsel. Defense counsel received no response to his initial inquiries.

On June 24, the undersigned forwarded a proposed letter to ICOA's counsel. The

letter was addressed to Magistrate Judge Lovegreen asking for a further review based on the uncertainty of the settlement results. On June 25 ICOA's counsel responded that "[the undersigned's] statement that the case was settled is inaccurate," and that the correct status is that negotiations are proceeding with the lender, Cornell. On June 26, 2007 a letter was hand delivered to the attention of Magistrate Judge Lovegreen requesting a further review. The review was scheduled for June 28, 2007. Mr. Quaintance was made available from California by telephone.

On June 28, the undersigned again expressed his concern with the progress of the lender's deliberations. Further assurances were requested including a request for entry of judgment as against ICOA for the higher range of the proposed settlement. During conference, it was again expressed that ICOA and its principals were confident that the settlement was accomplished, and the only issue was as to the amount of the settlement would be forthcoming in a relatively short period of time.

On July 9, 2007 the undersigned spoke with ICOA counsel requesting written assurances from Mr. Vahlsing that he was making efforts to effectuate the terms of the settlement. ICOA counsel was reminded that no Reply to the Counterclaim had been filed, nor had there been an Answer to the Third Party Complaint filed. ICOA counsel said that he would try to get the undersigned an idea of the status, and would explore the idea of having judgment entered against ICOA in the interim.

On July 11, 2007 the undersigned left a telephone message with ICOA counsel

asking for a return call by the end of the day concerning the settlement. The call was followed by an email to ICOA counsel requesting written assurances from Mr. Vahlsing that efforts were being made to effectuate the terms of the settlement. The telephone conference was followed by an email to ICOA's counsel that "Mr. Quaintance was becoming increasingly concerned with the credibility of ICOA's projections, and I have been asked to proceed with haste should written assurances not be forthcoming. I would appreciate hearing from you before the end of the day."

There was no response. Defense counsel waited until July 24, 2007 before filing its initial applications for default. Due to a deficiency in the certification, the applications for entry against third party defendants were amended and re-filed.[1] There was no response to the initial filing, and re-filing.

On July 26, 2007, the applications were again re-filed due to the requirement of a pdf filed affidavit with an actual signature, rather than an electronically filed signature. Following the re-filing there was still no response from ICOA, or its counsel.

On July 27, 2007 the Court entered default. On July 31, 2007, the undersigned responded to an inquiry from Magistrate Judge Lovegreen's clerk as to the status of the settlement. By this time, there was still no response from ICOA or its counsel.

It was not until August 2 that ICOA now cries foul, claiming the defaults were

---

[1] Defense counsel amended the certification to provide certified and regular mail notice to third party defendants pursuant to Local Rule 55(c). At the time of filing it was uncertain as to whether Attorney Cottone was representing the third party defendants individually.

entered without warning, and for no other reason, the defaults should be vacated. Once again, in its response, plaintiff claims a "tentative" settlement, and claims that a stay was placed in effect to prevent the applications for default. The only stay of which Defense Counsel is aware of is a stay of discovery, however, notwithstanding the same the Court in its initial Rule 16 conference of March 19, 2007 closed fact discovery effective August 20, 2007. The undersigned is unaware of any other stay being put into effect, and given the uncertainty of the settlement, and the failure of Plaintiff to respond with even minimum good faith assurances, and for the reasons stated below, default should not be vacated.

Argument

The standard to remove a default pursuant to Fed.R.Civ.P. 55(c) is "for good cause " rather than the more stringent standard of 'excusable neglect' applied to a motion for relief from final judgments pursuant to Federal Rule of Civil Procedure 60(b). The 'good cause' criterion applied to motions to set aside entries of default is more liberal, setting forth a lower threshold for relief." *US v. One Parcel of Real Property*, 682 F.Supp. 694 (D.RI.1988).

Good cause, however does not mean no cause, or that a party can set aside a default without good reason. In the First Circuit a trial court can set aside a default if the party presents a good reason for the default, and the existence of a meritorious defense. *American & Foreign Ins. Ass'n v. Commercial Ins. Co*., 575 F.2d 980, 983 (1st Cir. 1978).

Several factors relevant to a determination whether such a motion should be granted have been identified by the First Circuit, including: "(1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; and (7) the timing of the motion." *McKinnon v. Kwong Wah Rest*, 83 F.3d 498, 503 (1st Cir.1996).

In *McKinnon*, the First Circuit denied vacating the entry of default based upon the Defendant's apparent non-cooperativeness with its attorneys. In *McKinnon* the defendant's conduct was deemed a factor in denying vacating a default, since it appeared that at critical junctures during administrative proceedings, the defendant discharged its attorneys and retained new counsel. When the claims were finally brought to court, retained counsel sought multiple extensions to answer the complaint. Finally, retained counsel sought to withdraw its representation, yet defendant still refused to meet its responsibilities to answer the Complaint "hoping that it would all go away." *McKinnon*, 83 F.3d at 504.

In this case, Plaintiff's counsel did not even request extensions to answer the Counterclaims and third party complaints, nor provide any significant responses to Defense counsel's requests for information, and warnings of imminent action unless such response was forthcoming. There was never even an indication as to whether ICOA's counsel intended to enter an appearance on behalf of the individual third party

defendants. Rather, like the Defendant in *McKinnon*, it appears that third party defendants are hoping that it would all go away, and Plaintiff, having obtained the consent of Defendant for injunctive relief for control of the domain names, has no need to resolve matters expeditiously.

All the *McKinnon* criteria preponderate in favor of allowing the default to remain in place. Arguments for the first factor, (1) whether the default was willful, can be combined with the fourth factor, (4) the nature of the defendant's explanation for the default; the fifth factor, (5) the good faith of the parties; and the seventh factor (7) the timing of the motion. As to each of these factors, they should be decided in favor of continuing the default.

Defense counsel spoke and wrote to ICOA counsel numerous occasions expressing the need for assurances and reminding ICOA counsel that no Reply or Third Party Answers were filed. The last correspondence of July 11 requesting minimum assurances, simply that Third Party Defendant was acting in good faith to effectuate a settlement, went unanswered. Even with the intervention of the Court, and even to this date Third Party Defendant has done nothing to explain where it is in the process of settlement, what progress its lender is making, and what efforts he is taking to effectuate the settlement.

The timing of the motion did not come without warning. Telephone calls, court conferences and email inquiries were made providing ample warning that further action

would be imminent. Defense counsel explicitly warned ICOA counsel that a Reply and Answer to the Third Party Complaints was necessary.

In defense of ICOA counsel, it is presumed that he simply had nothing to report due to his client's recalcitrance in providing a response. Nonetheless, Mr. Quaintance was left without even minimal assurances that the Plaintiff and Third Party Defendants were acting in good faith to resolve his claims This went on from May 30, 2007 when the settlement was first reported as being imminent, to July 24, 2007 when the first applications for default were made.

Simply put, ICOA and its principals have provided no explanation for not responding to the many requests for information and assurances, and to the extent there has been any response, they have been far too vague, and far too late. Thus, factors (1) (4) (5) and (7) warrant keeping the default in effect.

As to factor (2) the delay has prejudiced Defendant significantly. Fact discovery is closed as of August 20. Defendant has personally traveled from California to participate in settlement discussions. Defendant has taken no action to further secure his position, to the extent it can be secured. In view of the admissions by ICOA that the Defendant is owed money, and in view of the other creditors seeking a better position to the limited funds, which may be available to ICOA, Defendant could seek an attachment or other remedy to secure its position. The passage of time for which Mr. Quaintance has refrained taking any such action, in reliance on the promise of a settlement, is prejudicial

to Mr. Quaintance and puts his ability to recover at substantial risk. In the meantime, by agreement, ICOA is operating with the disputed domain names by which it continues to receive an income. It can hardly be said therefore that removal of the default will not prejudice Mr. Quaintance.

As to whether there is a meritorious defense, ICOA simply relies on the allegations of its Verified Complaint, part of which admits the debt to Mr. Quaintance. Mr. Quaintance denies other substantive allegations raised by the Complaint. Third party defendants offer no verified defenses. No affidavits as to the counts against them are submitted. Rather, as to the Counts presented against Mr. Vahlsing and Mr. Strouthopoulos, there are simply general denials. The Reply and Third Party Answer was filed after entry of default with no application that it be filed out of time. It should in any event therefore be stricken, and given no effect.

As to ICOA, Mr. Quaintance seeks default only on his counterclaim that is for the amounts due under the Promissory Note, and the fraudulent misrepresentations made in connection with the transaction. ICOA does not dispute that it owes money to Mr. Quaintance per the Counterclaim. . In fact, ICOA, Inc. admits that it owes money to Mr. Quaintance. Compl. ¶ 6. Rather, the amount of the claim is in dispute. This amount remains subject to further proof by evidence in support of a motion for entry of final judgment, and hearing on proof of claim in support of final judgment.

Essentially then no meritorious defense is submitted either by ICOA or the individual third party defendants. Factor three; of the *McKinnon* analysis preponderates in favor of Defendant/ Counterclaim Third Party Plaintiff.

Finally, the amount of money involved is significant. The Note upon which Mr. Quaintance relies provides, as drafted by ICOA, substantial penalties. If interest provisions in the Note are given effect, the amount due to Mr. Quaintance exceeds $400,000.00.

Accordingly, the *McKinnon* factors support keeping the default in place. Notwithstanding the same, Mr. Quaintance remains willing, ready and able to effectuate the settlement offered and negotiated in Conference. It has always been ICOA and its principals' failure to provide assurances, or abide by the terms of the settlement that puts them in the position they are now in. To this date, no assurances or status remains reported to Defendant, and he remains in the dark as to whether the settlement was simply a ruse for ICOA to buy time, or whether there is any reasonable probability that it can occur.

Should the Court choose to consider Plaintiff/Third Party Defendant's Motion to Vacate the Entry of Default, it should then consider an award of reasonable attorneys fees to Defendant for the costs incurred in prosecution of the same. Defendant / Counterclaim Third Party Plaintiff has spent considerable effort to gain information or compel action on the party of Plaintiff/ Third Party Defendants/ Should the Court rule that attorneys fees

are appropriate, Defendant shall produce an affidavit in support of the same, at the direction of the Court.

Conclusion

Plaintiff/Counterclaim Defendant's Motion to Vacate Entry of Default should be denied. The Reply/Answer, which has been filed, should be stricken. Alternatively, Defendant/Third Party Plaintiff should be awarded costs and reasonable attorneys fees for the prosecution of the within motion, and Defendant should be compelled to address what actions have been taken to effectuate the terms of the settlement.

Defendant/ Counterclaim Third Party
Plaintiff
By his Attorneys
Law Office of Mark B. Morse

/s/ Mark B. Morse

MARK B. MORSE, ESQ.
RI Bar Reg No 3003
111 Wayland Avenue
Providence, RI 02906
(401) 831-0555
fax (401) 273-0937
email: mark@morselawoffice.com

August 6, 2007

**CERTIFICATION**

Anthony F. Cottone, Esq.
55 Dorrance Street, Suite 400
Providence, RI 02903
Email: cottonelaw@cox.net

I certify that I filed the within document through the ECF filing system, US District Court, District Rhode Island to be transmitted to the above referenced attorney through the ECF filing system.

/s/ Mark B. Morse

Mark B. Morse, Esq.
111 Wayland Avenue
Providence, RI 02903
Email: mark@morselawoffice.com

August 6, 2007