UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ICOA, INC., :
Plaintiff, :
v. :
:
KEVIN QUAINTANCE, : CA 07-069 S
Defendant, :
v. :
:
ERWIN VAHLSING, JR., and :
GEORGE STROUTHOPOULOS, :
Third Party Defendants. :

**MEMORANDUM AND ORDER**
**GRANTING MOTION**
**TO VACATE DEFAULTS**

Before the Court is a motion filed by Plaintiff and Counterclaim Defendant ICOA, Inc. ("ICOA"), and Third Party Defendants Erwin Vahlsing, Jr. ("Vahlsing"), and George Strouthopoulos ("Strouthopolous") to vacate defaults which were entered against them on July 27, 2007. See Counterclaim and Third Party Defendants': (1) Objection to Third Party Plaintiff's Motions to Default; and (2) Motion to Vacate Defaults (Document ("Doc.") #29) ("Motion to Vacate" or "Motion"). Hearings on the Motion were held on August 17 and 31, 2007. Thereafter, the matter was taken under advisement.

**Facts**

On May 18, 2007, Defendant Kevin Quaintance ("Quaintance") filed an Amended Counterclaim and Third Party Complaint (Doc. #14) ("Counterclaim/Complaint") against ICOA, Vahlsing, and Strouthopoulos (collectively "Movants"). See Docket. ICOA was served with the Counterclaim/Complaint through the Court's ECF[1] system. See Defendant/Counterclaim Plaintiff Kevin Quaintance's

[1] ECF is an acronym for Electronic Case Filing.

Application to Clerk for Entry of Default against Counterclaim Defendant ICOA, Inc. (Doc. #22) at 1-2 (Affidavit of Mark B. Morse Re ICOA). Vahlsing and Strouthopoulos were served with a copy of the summons and Counterclaim/Complaint. See Defendant/ Third Party Plaintiff Kevin Quaintance's Amended Application to Clerk for Entry of Default against Third Party Defendant Erwin Vahlsing (Doc. #20) at 1-2 (Affidavit of Mark B. Morse Re Vahlsing); Defendant/Third Party Plaintiff Kevin Quaintance's Amended Application to Clerk for Entry of Default against Third Party Defendant George Strouthopoulos (Doc. #21) at 1-2 (Affidavit of Mark B. Morse Re Strouthopoulos).

On May 30, 2007, a settlement conference was held before U.S. Magistrate Judge Robert W. Lovegreen. See Docket. The parties tentatively agreed to a settlement which would involve the transfer of funds from ICOA to Quaintance. See Counterclaim and Third Party Defendants' Memorandum in Support of Their: (1) Objection to Third Party Plaintiff's Motions to Default; and (2) Motion to Vacate Defaults ("Movants' Mem.") at 1-2; Defendant/ Counterclaim Third Party Plaintiff Kevin Quaintance's Memorandum in Support of his Objection to Plaintiff/Counterclaim Defendant ICOA, Inc. and Third Party Defendants Erwin Vahlsing and George Strouthopoulos' Motion to Remove Entry of Default and to Strike the Reply to the Counterclaim and the Answer to the Third Party Complaint ("Quaintance Mem.") at 3. The settlement was to be within an agreed-upon, relatively narrow range of monetary figures and was conditioned upon ICOA receiving additional refinancing by its secured lender, Cornell Funding. See ICOA Mem. at 1-2; Quaintance Mem. at 3. According to Quaintance's counsel, "ICOA's counsel represented that information regarding the amount of settlement was expected the following week." Quaintance Mem. at 3. Movants do not appear to dispute this. See Tape of 8/17/07 Hearing; Tape of 8/31/07 Hearing.

Movants contend that the parties agreed at the May 30, 2007, settlement conference "to stay any activity in the ... matter until such time as [the] closing [for the refinancing] could occur." Movants' Mem. at 2 (bold and italics omitted). On the other hand, Quaintance contends that the agreement was only that discovery would be stayed. See Tape of 8/31/07 Hearing.

The matter was reviewed on June 14, 2007, apparently before Magistrate Judge Lovegreen. See Quaintance Mem. at 3; see also Docket. According to Quaintance, at this conference his counsel was told "that a lenders review committee was scheduled to meet June 19 at which time a final decision as to the amounts would be made." Quaintance Mem. at 3. Quaintance states that his counsel expressed concern about the delay but was asked to remain patient and was told "that the final decision would be known on June 19." Id. It appears that Judge Lovegreen continued the matter for a further conference on June 28, 2007. See id.

Prior to the June 28th conference, Quaintance's counsel telephoned and e-mailed Movants' counsel, seeking information about the result of the June 19th committee meeting, but he received no response to his initial inquiries. See id. On June 24th Quaintance's counsel sent Movants' counsel a copy of a proposed letter to Judge Lovegreen which requested "a further review based on the uncertainty of the settlement results." Id. at 4. Movants' counsel responded that Quaintance's counsel's "'statement that the case was settled is inaccurate,' and that the correct status is that negotiations are proceeding with the lender, Cornell." Id. (presumably quoting a letter from Movants' counsel). After receiving this communication, Quaintance's counsel requested that Judge Lovegreen review the matter on June 28th. See id.

According to Quaintance, at the June 28th conference his counsel again expressed concern about the progress of the

lender's deliberations and asked for further assurances that the settlement would be effectuated. See Quaintance Mem. at 4. Quaintance states that such assurances were given. See id. ("During [the] conference, it was again expressed that ICOA and its principals were confident that the settlement was accomplished, and the only issue was as to the amount of the settlement [which] would be forthcoming in a relatively short period of time.").

On July 9th Quaintance's counsel spoke with Movants' counsel and requested written assurances from Vahlsing that he was making efforts to effectuate the terms of the settlement. See id. Quaintance's counsel also states that he reminded Movants' counsel that no reply to the counterclaim had been filed and that no answer had been filed to the Third Party Complaint. See id. According to Quaintance, Movants' counsel responded "that he would try to get [Quaintance's counsel] an idea of the status, and would explore the idea of having judgment entered against ICOA in the interim." Id.

Quaintance's counsel telephoned and e-mailed Movants' counsel on July 11th, requesting written assurances that efforts were being made to effectuate the terms of the settlement. See id. at 4-5. In an e-mail Quaintance's counsel stated that "I have been asked to proceed with haste should written assurances not be forthcoming. I would appreciate hearing from you before the end of the day." Id. at 5. Quaintance states that there was no response to these messages. See id.

On July 24, 2007, Quaintance filed his initial applications for default. See id. The applications were re-filed on July 26, 2007, because the initial affidavits had electronic signatures rather than actual signatures. See id. On July 27, 2007, the Clerk entered defaults against ICOA, Vahlsing, and Strouthopoulos. See Docket. The instant Motion to Vacate was

filed on August 2, 2007.[2] See Docket.

**Law**

Fed. R. Civ. P. 55(c) provides that for good cause shown the court may set aside an entry of default. KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 12 (1st Cir. 2003); McKinnon v. Kwong Wah Rest., 83 F.3d 498, 502 (1st Cir. 1996). The burden of demonstrating good cause for the removal of a default rests with the party seeking the relief. See KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d at 14. Good cause is a mutable standard, varying from situation to situation, but it is not so elastic as to be devoid of substance. McKinnon v. Kwong Wah Rest., 83 F.3d 498 at 503. There is no precise formula for making this determination. KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d at 12; McKinnon v. Kwong Wah Rest., 83 F.3d at 503. Each case necessarily turns on its own unique circumstances. Id. However, the First Circuit has identified seven factors which should be considered in determining whether good cause has been shown. Id. They are: "(1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; 6) the amount of money involved; (7) the timing of the motion [to set aside entry of default]." KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d at 12 (quoting McKinnon v. Kwong Wah Rest., 83 F.3d at 503)(alteration in original).

***Willfulness***

The Court is satisfied that the defaults were not willful. Movants' counsel believed that there was an agreement to stay any activity in the case. See Movants' Mem. at 2. In addition,

---

[2] The Motion to Vacate was filed on August 2, 2007, as a response to the amended applications for default. See Docket. On August 6th, it was re-docketed as a Motion to Vacate the defaults. See id.

Movants' counsel represents that the defaults were made without advance notice. See Movants' Mem. at 2. While Quaintance's counsel states that he reminded Movants' counsel on July 9, 2007, that no reply to the Counterclaim or answer to the Third Party Complaint had been filed, see Quaintance Mem. at 4, and that his July 11th request for a response from Movants counsel "before the end of the day," id. at 5, went unanswered, these communications did not explicitly advise Movants' counsel that Quaintance was going to move to default them.[3] Quaintance is critical of Movants for not requesting extensions to answer the Counterclaim and Third Party Complaint, see id. at 7, but given their belief that a stay was in effect their failure to request such extensions is understandable.

Doubtless, Quaintance had ample reason to be frustrated with ICOA's failure to effectuate the settlement within the time frame which he had been led to believe was likely. His counsel also had reason to be aggravated by Movants' counsel's failure to respond more fully and promptly to his telephone calls and e-mails. Nevertheless, in light of Movants' belief that there was an agreement to stay all activity, the Court cannot find that the defaults were willful.

***Prejudice***

Quaintance argues that he has been prejudiced because fact discovery closed as of August 20, 2007. See Quaintance Mem. at 9. However, Quaintance does not explain what additional

---

[3] Quaintance states that "[d]efense counsel explicitly warned ICOA counsel that a Reply and Answer to the Third Party Complaints was necessary." Quaintance Mem. at 9. However, Movants represent that "Quaintance's motions to default ... were made without advance notice ...." Movants' Mem. at 2 (italics omitted). In resolving this factual dispute, the Court concludes that while Quaintance may have called the attention of Movants' counsel to the fact that Movants had not filed responses to these pleadings, Quaintance did not explicitly advise Movants that he intended to move to have them defaulted.

discovery he requires, and he himself notes that ICOA has admitted in its Complaint that it owes money to him. See Quaintance Mem. at 1 (citing Complaint (Doc. #3) ¶ 10). Thus, his need for additional discovery is not entirely clear. Furthermore, to the extent that Quaintance needs time to conduct such discovery, this need can be addressed by extending the discovery period. If such a request is made by Quaintance, the Court would be inclined to grant it.

Quaintance notes that he had to travel from California to participate in settlement discussions in Rhode Island. See Quaintance Mem. at 9. He implies that such travel should be considered in determining prejudice. See id. The Court is not so persuaded. The Court requires that principals attend settlement conferences. Moreover, the travel does not appear to have prejudiced Quaintance's claims and/or defenses in the present action, and that is the primary factor in determining prejudice, cf. Coon v. Grenier, 867 F.2d 73, 77 (1st Cir. 1989) ("Plaintiff does not claim that witnesses have died, that memories have dimmed beyond refreshment, that some discovery scheme has been thwarted, or that evidence has been lost ... [and] simply requiring a party to litigate the action does not amount to prejudice[.]")(internal quotation marks and citations omitted).

Quaintance also argues that in reliance on the promise of a settlement he has refrained from taking any action to secure his position and that this constitutes prejudice because it puts his ability to recover at substantial risk. See Quaintance Mem. at 9-10. It is the Court's understanding from the hearings that Quaintance does not dispute that ICOA's ability to pay the debt is dependant upon ICOA obtaining significant re-financing with its largest secured creditor. Thus, it does not appear that ICOA had assets which were available for attachment as of July 27,

2007, the date the defaults were entered (or even as of the date of the last settlement conference), and which subsequently became unavailable for attachment. Hence, the Court finds that Quaintance would not be prejudiced by the granting of the Motion.

***Meritorious Defense***

At the hearings, Movants' counsel represented that Movants have meritorious defenses to the counts of the Counterclaim.[4] See Tape of 8/17/07 Hearing; Tape of 8/31/07 Hearing. As to the breach of contract claim, he indicated that Movants contend that the agreement was usurious. See Tape of 8/31/07 Hearing. Counsel for Quaintance acknowledged that Movants may have defenses to the fraud/misrepresentation claims. See id. It also appears that there is some dispute regarding the exact amount which Quaintance may be owed. Accordingly, the Court finds that Movants at least have a meritorious defense to the fraud and misrepresentation claims and that they possibly they have some defense as to the amount owed under the breach of contract claims.

***Nature of Movants' Explanation***

Movants explain their failure to respond to the Counterclaim and Third Party Complaint on the basis that they believed a stay was in effect. See Movants' Mem. at 2. The Court accepts this explanation. This is not to say that the Court condones ICOA's apparent foot-dragging in implementing the settlement agreement or Movants' counsel's failure to promptly respond to Quaintance's counsel's repeated and increasingly urgent inquiries for information regarding progress. The Court only finds that

[4] Counts 1 and 2 of the Counterclaim are directed against ICOA and allege, respectively, breach of contract and fraud/misrepresentation in relation to certain promissory notes. See Counterclaim (Doc. #14) ¶¶ 7-17. Count 3 charges ICOA, Vahlsing, and Strouthopoulos with fraud and misrepresentation in connection with a stock repurchase agreement. See id. ¶¶ 18-24.

Movants held this belief.

***Good Faith of the Parties***

The Court finds it is a close question whether Movants have acted in good faith. While the Court accepts Movants' explanation that they believed a stay was in effect, the Court is nonetheless troubled by their conduct in this matter. It appears that Movants led Quaintance to believe that the settlement agreement could be implemented relatively quickly, but after the agreement to stay was in place Movants' sense of urgency to implement that agreement appears to have waned considerably. Thus, there is at least some doubt in the Court's mind whether Movants have acted in good faith relative to implementing the settlement agreement.

In contrast, the Court has no difficulty finding that Quaintance has acted in good faith. Although his counsel may not have explicitly communicated to Movants that default was imminent, his counsel's repeated expressions of concern about the delay and the lack of information regarding efforts to secure the refinancing eliminate any suggestion that Quaintance misled Movants regarding their duty to respond. As there is no doubt about the good faith of Quaintance and some question regarding Movants' good faith, this factor weighs against the granting of the Motion.

***Amount of Money Involved***

In the Counterclaim, Quaintance alleges that the amount due pursuant to the promissory notes is $516,064.35. See Counterclaim ¶ 14. This is a substantial amount of money and given that Movants dispute that this is the amount owed,[5] this

[5] Although ICOA agrees that it owes money to Quaintance, see Complaint ¶ 10, it appears to dispute the amount of that debt, see Tape of 8/17/07 Hearing, claiming, *inter alia*, that the agreement was usurious, see id.

factor weighs in favor of granting the Motion.

***Timing of the Motion***

Movants filed the Motion to Vacate on August 2, 2007, six days after the defaults were entered. See Docket. Given that there was an intervening weekend (July 28-29), the Court finds that Movants acted relatively promptly. Accordingly, this factor weighs in favor of granting the Motion.

**Conclusion**

Although the factors do not all weigh in favor of granting the Motion, after careful consideration the Court concludes that the scales tip in favor of Movants. While the Court has concerns about Movants' failure to implement the settlement agreement on a timely basis, given all the circumstances the Court does not find that the appropriate remedy for this failure is to deny the instant Motion. Accordingly, the Motion to Vacate is GRANTED. The defaults entered against ICOA, Vahlsing, and Strouthopoulos on July 27, 2007, are hereby vacated.

So ordered.

ENTER:

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
October 3, 2007